Angelo F. ORAZIO, Plaintiff,

v.

TOWN OF NORTH HEMPSTEAD et al., Defendants.

No. 76 C 1662.

United States District Court,
E. D. New York.

Feb. 16, 1977.

George Nager, Mineola, N.Y., for plaintiff, by James A. Lee, Mineola, N.Y.

Edward G. McCabe, Town Atty., North Hempstead, N.Y., for defendants, by Joseph A. Guarino, Sr. Deputy Town Atty., Town of North Hempstead, N.Y.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff, a successful Democratic candidate for New York State Assemblyman in the November 2, 1976 general election, challenges the constitutionality of an ordinance which prohibited him from erecting political wall signs more than six weeks before the election. For the reasons which follow, the court holds that the ordinance violates both the Equal Protection Clause and the First Amendment.

The ordinance in question is Section 70–201 of the Code of the Town of North Hempstead ("Town") which provides in pertinent part:

"[P]olitical wall signs shall be permitted within the Town of North Hempstead in compliance with the following conditions:

.    .    .    .    .

C.  No sign shall be erected prior to six weeks before election for which the permit was obtained."

On September 2, 1976 plaintiff applied to the Town's Building Department for a permit to erect two political wall signs [1] on a

---

1.  The ordinance in question defines such a sign as follows:

"A.  A 'political sign' is defined as any advertising or identification sign or device, the

building used for his campaign headquarters, located in an area designated for Business A Zoning. Although the Democratic primary was to be held on September 14, the permit was immediately denied because plaintiff was unopposed in the primary and thus was not a candidate in that election.[2] On the same day plaintiff sought a permit for the signs to be erected on September 21, six weeks prior to the November 2 general election. The Building Department granted this permit on September 20.

A week after his first application was denied plaintiff filed the present action to have the ordinance declared unconstitutional and to enjoin its enforcement.[3] Two days later, on September 11, plaintiff erected the signs, and they remained there until the general election. On September 14 plaintiff was served with a Notice of Violation.

■ The case is now before the court on defendants' motion for summary judgment, in which they urge first that the court has no jurisdiction under 28 U.S.C. § 1343(3) because the action has become moot and thus no justiciable controversy is presented. The claim of mootness rests on assertions that plaintiff put up his signs when he wished and their illegal status ended on September 21, 1976, when the permit took effect. That claim must be rejected for if, as plaintiff alleges, there is a pending prosecution involving the signs, this case is not moot. Even in the absence of a pending prosecution, the case is not moot because it falls within the category of cases involving issues which are "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. Interstate Commerce Commission,*

219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); *Moore v. Ogilvie,* 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969).

In the absence of a class action, the foregoing exception to the mootness doctrine is limited to cases in which two elements are present:

"(1) [T]he challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford,* 423 U.S. 147, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975).

This case easily meets both criteria. First, the 19 days between September 2, the date of denial of plaintiff's first application, and September 21, when the second permit became effective, obviously was too brief a period in which to litigate the constitutionality of the ordinance underlying the denial. Second, plaintiff, who was a candidate in the last two elections, could be reasonably expected to run again and face the same problems with the ordinance in question. Therefore, the case is not moot.

■ Defendants also contend that the complaint should be dismissed because plaintiff failed to pursue his administrative remedies. The Second Circuit, despite dicta in numerous Supreme Court decisions, has retained a rule that each action under 42 U.S.C. § 1983 must be scrutinized to determine whether the court should require exhaustion of State administrative remedies. That rule, however, has been recently redefined:

"Before the court below may relinquish its § 1983 jurisdiction it must    . . .

purpose of which is to identify or promote the election of any person seeking public office or any organization established or formed for the purpose of promoting the election of such person."
Subdivision B of the ordinance provides:
  "B.   .   .   Wall signs shall be permitted in Business and Industrial Districts.   . ."

**2.** New York Election Law § 149 provides that persons designated for uncontested offices in a

primary election are deemed nominated without balloting. This, of course, does not dispense with a candidate's need to identify himself as a "person seeking public office" within the definition in n.1, *supra.*

**3.** Plaintiff's complaint requests a three-judge court, but such a request must be denied because plaintiff is attacking a local ordinance. *Moody v. Flowers,* 387 U.S. 97, 101, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967).

be positively assured—it may not presume—that there are speedy, sufficient and readily available administrative remedies remaining open to pursue . . ." *Morgan v. LaVallee,* 526 F.2d 221, 224 (2 Cir. 1975)

No such showing has been made in this case.

In addition, the Second Circuit has also indicated that administrative expertise would be of little assistance in cases pertaining to the First Amendment. *Plano v. Baker,* 504 F.2d 595, 599 (2 Cir. 1974). Therefore, this is not an appropriate case in which to require exhaustion of State administrative remedies.

Finally, defendants argue that on the undisputed material facts the ordinance plainly does not violate plaintiff's constitutional rights. Before dealing with the merits, however, the court *sua sponte* is obliged to satisfy itself that it is not transgressing upon the principles of comity and federalism enunciated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

Unlike the situation in *Younger,* plaintiff was served with a Notice of Violation five days *after* he instituted this federal action. The Supreme Court, however, in a 5–4 decision in *Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975), held that

"where state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force."

■ Since no proceedings of substance on the merits took place prior to the Notice of Violation, *Younger* would appear to apply to this case. *Younger,* however, is not a jurisdictional limitation, but rather a matter of comity which may be waived. See

Sosna v. Iowa, 419 U.S. 393, 396, 95 S.Ct. 553, 42 L.Ed.2d 532 n. 3 (1975).

■ Defendants here have waived the *Younger* issue by not raising it. The only mention of the Notice of Violation appears in plaintiff's memorandum of law submitted in opposition to defendants' summary judgment motion. Although plaintiff referred to it in terms of a "pending prosecution," defendants utterly failed to even advert to the Notice of Violation either in their original motion papers or their reply to plaintiff's memorandum of law. The court has received no further indication from either party as to its status or outcome and feels free to proceed to a consideration of the remaining issues of this case.[4]

■ In addition, even assuming defendants did not waive the *Younger* issue, the court finds that this case comes within one of the exceptions to *Younger.* Federal intervention is permissible where the challenged statute is " 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.' " *Younger, supra,* 401 U.S. at 37–38, 91 S.Ct. at 755. The ordinance at issue here meets that test, for it patently violates the Equal Protection Clause, would be unconstitutional however applied and cannot be construed to avoid this infirmity.

■ Turning now to the merits, the starting-point for analysis is *Police Department of Chicago v. Mosley,* 408 U.S. 92, 96, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972), in which the Supreme Court declared:

"[U]nder the Equal Protection Clause, not to mention the First Amendment itself, government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views. . . . Selective exclusions from a public forum may not be based on

---

4. That the Supreme Court in *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) reached the *Younger* issue although it was not raised in the district court, does not dissuade the court from its conclusion,

content alone, and may not be justified by reference to content alone."[5]

In the present case the Town is practicing what *Mosley* proscribed. The Town places no time limits on non-political wall signs which "advertise the nature of the business being conducted on those premises," whereas political wall signs affixed to a candidate's campaign headquarters may only be erected six weeks prior to the election. There is no question that the Town is discriminating against a particular class of signs because of their political content.[6]

Reasonable "time, place and manner" regulations are allowed, of course, as long as they are "narrowly tailored" to a substantial governmental interest. *Mosley, supra,* 408 U.S. at 101–02, 92 S.Ct. 2286. Defendants' principal contention is that the ordinance is properly founded on the Town's concern for aesthetic values. While this is a valid legislative objective, it must be advanced in a manner consistent with the Equal Protection Clause. *Id.,* at 99, 92 S.Ct. 2286. Since political wall signs are not inherently more obnoxious or ugly than non-political wall signs, the Town may not discriminate against political signs on this basis.[7]

Defendants also rely heavily on *Lehman v. City of Shaker Heights,* 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974), which held that a city could exclude political advertisements from its public transit system even though non-political advertisements were allowed. *Lehman,* however, turned on the view of a slim majority of the Court that public transit commuters are a "cap-

tive audience" which the city could protect from a barrage of political advertisements.

Although the test of what constitutes a captive audience is unclear, from a survey of recent cases the court concludes that the wall signs in this case do not confront a captive audience, since any passerby may readily avert his glance. The Supreme Court's opinion in *Erznoznik v. Jacksonville,* 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975), is strong support for this conclusion, for there a huge screen of a drive-in movie was deemed not to create a captive audience. See also *Spence v. Washington,* 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974), in which the plurality reached the same conclusion with respect to a United States flag hung from a second-floor apartment window. Thus, the suggestion in *Lehman* that billboards create a captive audience, 418 U.S. at 302 and 308, 94 S.Ct. 2714, has not been followed.

Lower courts recently confronted with similar Equal Protection-First Amendment issues have followed *Mosley* while limiting *Lehman* to the captive audience situation. See, e. g., *Lawrence University Bicentennial Commission v. City of Appleton,* 409 F.Supp. 1319, 1325 (E.D.Wis.1976), where the court held that a school board could not deny the use of a gymnasium for a political speaker when it allowed "non-partisan" speakers. The court's perceptive comment is appropriate here:

"It has often been stated that the essence of the First Amendment is the protection of political speech. See A. Meiklejohn, Political Freedom: The Constitutional Powers of the People (1948). If that be

---

for defendants were given ample opportunity to raise this waivable issue.

**5.** The plurality opinion in *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), wished to limit *Mosley* to its facts, but the four dissenters plus Mr. Justice Powell, who wrote a concurring opinion, disagreed with this part of the plurality opinion.

**6.** Defendants attempt to counter charges of an equal protection violation by noting that both political and non-political wall signs must be taken down shortly after the termination of the

businesses that they advertise. Only the pre-election period, however, not the post-election period, is at issue in this case.

**7.** In *Lehman v. City of Shaker Heights,* 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974), five members of the Supreme Court rejected the view that political signs are more offensive than other commercial advertisements. 418 U.S. at 308, 94 S.Ct. 2714 (Douglas, J., concurring), and at 319, 94 S.Ct. 2714 (Brennan, J., dissenting).

so, it is a strange policy indeed which exalts nonpartisan speech over political speech. Arguably, such an inversion of values ill serves the public upon whom falls the serious and challenging business of self-government." *Id.,* at 1326.

The Ninth Circuit, in *Aiona v. Pai,* 516 F.2d 892 (9 Cir. 1975), also distinguished *Lehman* and held that *Mosley* required it to overturn a statute which banned movable political campaign signs, but not commercial signs, from sidewalks and other areas adjacent to highways.[8]

Defendants finally assert that time restrictions on political wall signs are necessitated by the fact that politics is a temporary business. Whether temporary or not, politics is important business, and it is difficult to perceive what governmental interest is served by placing time limits on the public's opportunity to be informed about candidates who are seeking public office or organizations which support them.

To paraphrase what was said in *Lawrence, supra,* it is a strange policy indeed which would exalt commercial advertising over political advertising. Accordingly, this court finds that the pre-election time limit ordained in § 70–201C of the Town's Ordinance is not narrowly tailored to legitimate objectives but rather discriminates against political wall signs solely on the basis of their content.

█ Furthermore, and consistent with the Supreme Court's acceptance of "the assumption that the widest possible dissemination of information from diverse and antagonistic sources is essential to the welfare of the public," *Associated Press v. United States,* 326 U.S. 1, 20, 65 S.Ct. 1416, 1424–25, 89 L.Ed. 2013 (1945), the court also holds that no time limit on the display of pre-elec-

tion political signs is constitutionally permissible under the First Amendment.

Defendants' motion for summary judgment is therefore denied. Since there is no genuine issue as to any material fact, plaintiff is awarded summary judgment despite the absence of a formal motion by him. *Morrissey v. Curran,* 423 F.2d 393 (2 Cir. 1970), *cert. denied,* 399 U.S. 928, 90 S.Ct. 2245, 26 L.Ed.2d 796 (1970). Section 70–201(C) of the Town's Code is declared unconstitutional and its enforcement is enjoined.

SO ORDERED.

---

8. Defendants also rely on *Ross v. Goshi,* 351 F.Supp. 949 (D.Haw.1972), in which the court, after striking down a statutory amendment which prohibited campaign signs, upheld the original statute, which had exempted campaign signs from the operation of the law for a period of 60 days preceding and 10 days following an election. While the facts in *Ross* are not entirely clear, a close reading of the opinion reveals that it does not support defendants here.

The *Ross* court upheld the original statute on the understanding that it allowed political signs at any time if they conform to restrictions placed on outdoor signs generally and that it granted campaign signs "special favorable treatment not accorded other types of signs" by exempting the former from the general restrictions for the 70-day period. *Id.,* at 955. No such favorable treatment of political signs is apparent here.