**CITY OF ANTIOCH, a municipal corporation, Plaintiff,**

v.

**CANDIDATES' OUTDOOR GRAPHIC SERVICE, a California corporation, et al., Defendants.**

**Cynthia J. FULTON and Candidates' Outdoor Graphic Service, et al., Plaintiffs,**

v.

**MEMBERS OF the CITY COUNCIL OF the CITY OF ANTIOCH, et al., Defendants.**

**Nos. C–82–0731–WWS, C–82–0832–WWS.**

United States District Court, N.D. California.

Oct. 15, 1982.

Wayne S. Canterbury, David W. Greenthal, Canterbury, Raub & Greenthal, San Francisco, Cal., for plaintiff Cynthia J. Fulton, defendant & counterclaimant Candidates' Outdoor Service.

William R. Galstan, City Atty., City of Antioch, Antioch, Cal., Dwight B. Bishop, Inc., Walnut Creek, Cal., for plaintiff and counterdefendant City of Antioch.

## MEMORANDUM OF OPINION

SCHWARZER, District Judge.

These consolidated actions bring before the Court the question of the constitutionality of the City of Antioch's ordinance limiting to the 60 day period before an election the posting of political signs that promote candidates for public office or advocate a position on upcoming ballot propositions.

The city, which bears the burden of showing that its ordinance comports with the First Amendment, seeks a declaration affirming the constitutionality of Section 9–5.1115(b)(4)(ii) of its Municipal Code and an injunction requiring defendants Candidates' Outdoor Graphics Service (COGS) and Cynthia Fulton[1] to obey the local law. By coun-

---

**1.** Although the City of Antioch did not raise the issue, there is a question whether these defendants have standing to challenge the ordinance. As a jurisdictional doctrine determining whether a controversy is justiciable, the issue of standing is properly raised by the court *sua sponte.* Problems of standing to litigate comprise both constitutional limitations on the judicial power under Article III of the federal Constitution and self-imposed prudential restraints. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 102 S.Ct. 752, 757–59, 70 L.Ed.2d 700 (1982). The bedrock requirement for standing in the constitutional sense is a

showing that the claimant has suffered cognizable injury; he may not be merely a concerned bystander who presents a generalized grievance about government. *Id.* at 758–59.

Both defendants in this case meet this showing of injury in fact. COGS prints and posts political signs for candidates in local, State, and national elections. The firm was engaged by a candidate seeking statewide office to poster in preparation for the June 1982 primary. Posting was begun well in advance of the 60–day period. Although this candidate was defeated in the June primary, COGS, which has a Northern California office in the City of Belmont, is likely to again be hired to perform its services

ter motion in a related suit, COGS and Fulton seek a declaratory judgment holding the Antioch ordinance violative of the First and Fourteenth Amendments and a permanent injunction against its enforcement.

These suits testing the constitutionality of the Antioch law were brought in the early part of 1982. The city voluntarily agreed to suspend enforcement of its ordinance pending a determination by this Court of the ordinance's validity. With the general election of November 2nd now only weeks away, postering will be permitted under the ordinance's 60 day rule until after the election. Although the issue thus appears temporarily mooted, it may properly be considered as raising a case and controversy within the meaning of Article III since it is one of those issues which is "capable of repetition, yet evading review." *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Taxpayers for Vincent v. Members of City Council,* 682 F.2d 847, 849 n. 1 (9th Cir.1982).

### I. *The Local Ordinance*

The Antioch ordinance [2] limits the posting of outdoor political signs publicizing

---

in Antioch and other Bay Area cities. *Taxpayers for Vincent v. Members of City Council,* 682 F.2d 847, 849 n. 1 (9th Cir.1982). The fact that COGS is paid to advertise candidates does not impose a barrier to standing, nor does it mean that the speech in question is unprotected or deemed commercial because COGS has an economic interest in its promotion. *See Metromedia, Inc. v. San Diego,* 453 U.S. 490, 504 n. 11, 101 S.Ct. 2882, 2890 n. 11, 69 L.Ed.2d 800 (1981).

Cynthia Fulton, the other defendant in this suit, lives in Antioch and intends to campaign by posting political signs in her community. The ordinance has the kind of direct and tangible effect on her legal interests which is requisite to her standing to participate in this suit.

2. Antioch, California Municipal Code § 9–5.-1115(b) (1979) (amended 1981). The portion of the sign ordinance dealing with special restrictions placed on political signs reads as follows:

(b) *Political signs.*

(1) *Permission to use.* Notwithstanding anything to the contrary contained in this article, political signs shall be permitted in the City subject to the terms and conditions set forth in this subsection, which terms and conditions shall apply only to outdoor political signs.

(2) *Political sign defined.* "Political sign" shall mean any sign which is designed to influence the action of the voters for the passage or defeat of a measure appearing on the ballot at any national, State, or local election or which is designed to influence the voters for the election or defeat of a candidate for nomination or election to any public office at any national, State, or local election.

(3) *Registration of responsible parties for signs.* Any political campaign committee or candidate who utilizes political signs shall register the name of a person within the political committee or the candidate himself who shall be responsible for the political signs erected on behalf of and by such committee or candidate, their placement, and their maintenance within the City, and such person shall be considered the "responsible party." Such responsible party shall complete a registration form provided by the City, giving his name and address and where he can be contacted, and shall agree to become responsible for such political signs.

(4) *Location, time of erection, and type.* Political signs are hereby permitted in any zone without the prior approval of the Commission or Council. However, any such sign shall not:

(i) Be permanent or lighted;

(ii) Be erected earlier than sixty (60) days before the election to which they relate;

(iii) Be attached to any utility pole, fence, tree, or other vegetation or upon any public right-of-way;

(iv) Be so situated that the face thereof is specifically oriented for viewing toward any freeway right-of-way;

(v) Be erected in such a manner that it will or reasonably may be expected to interfere with, obstruct, confuse, or mislead traffic or be so situated as to endanger the health, safety, or welfare of people or endanger property;

(vi) Be erected or place at the intersection of any street, or within the segment created by drawing an imaginary line between points fifty (50′) feet back from where the curb lines of the intersection quadrant intersect;

(vii) Signs used in primary elections shall not remain for general election purposes on behalf of a successful primary campaign candidate but shall be removed pursuant to the provision of subsection (5) of this subsection.

(viii) Be erected without the permission of the owner of property on which it is located;

(ix) Be placed upon any other sign, unless specifically authorized by the owner or person in possession of such other sign; and

(x) Be erected by a political campaign committee or candidate without first having registered the responsible party.

(5) *Removal.* A political sign shall:

(i) Be removed within fourteen (14) days after the election to which it relates;

\* \* \* \* \* \*

(7) *Exemptions.* The provisions of this subsection shall not apply to the following:

ballot propositions or promoting candidates for public office to a period of 60 days prior to the election to which they relate. The term "political sign" is defined as "any sign which is designed to influence the action of the voters for the passage or defeat of a measure appearing on the ballot at any national, State, or local election." Antioch, California Municipal Code § 9–5.1115(b)(2) (1979).

In effect, the local law imposes a year-round ban on political sign postering which is temporarily suspended 60 days before an election and reinstated after the election has taken place. Candidates and advocates have a sixty day window within which to reach Antioch voters via the medium of the temporary political sign, a medium whose unique advantages have been recognized by other courts. *Baldwin v. Redwood City,* 540 F.2d 1360, 1368 (9th Cir.1976), *cert. denied,* 431 U.S. 913, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977); *John Donnelly & Sons v. Campbell,* 639 F.2d 6, 16 (1st Cir.1980), *aff'd,* 453 U.S. 916, 101 S.Ct. 3151, 69 L.Ed.2d 999 (1981); *Van v. Travel Information Council,* 52 Or. App. 399, 628 P.2d 1217, 1226 (1981).

Only Section 9–5.1115(b)(4)(ii) of Antioch's Municipal Code is challenged by defendants; the Court is not asked to decide the constitutionality of the entire portion of the Antioch ordinance dealing with political signs. The Court notes in passing, however, that Section 9–5.1115(b)(4)(v) which purports to prohibit the posting of political signs in any manner that may interfere with, obstruct, confuse, or mislead traffic, or endanger the health, safety, or welfare of people, raises serious questions of vagueness and overbreadth.

## II. *Standard of Review in First Amendment Cases*

■ The Ninth Circuit has outlined certain general principles which this Court must apply in analyzing legislative enactments, such as Antioch's, which regulate First Amendment rights. *Taxpayers for Vincent v. Members of City Council,* 682 F.2d 847, 849 (9th Cir.1982) (quoting *Rosen v. Port of Portland,* 641 F.2d 1243, 1246 (9th Cir.1981)) (citations omitted).

*First,* the law is presumptively unconstitutional and the state bears the burden of justification .... *Second,* the law must bear a "substantial relation" to a "weighty" governmental interest .... The law cannot be justified merely by the showing of some legitimate governmental interest.... *Third,* the law must be the least drastic means of protecting the governmental interest involved; its restrictions may be "no greater than necessary or essential to the protection of the governmental interest."

The city argues that this rigorous standard of review should not be applied to its ordinance because it is merely a "time, place, and manner" restriction which only incidentally burdens those seeking to inform the public about issues and candidates in upcoming elections. It is true that "laws regulating time, place, or manner of speech stand on a different footing from laws prohibiting speech altogether." *Linmark Associates, Inc. v. Willingboro,* 431 U.S. 85, 93, 97 S.Ct. 1614, 1618, 52 L.Ed.2d 155 (1977). Such restrictions are permissible "provided that they are justified without reference to the content of the regulated speech, that they serve a significant governmental interest, and that in so doing they leave open ample alternative channels for communication of the information." *Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council Inc.,* 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976).

The Antioch ordinance is clearly a regulation with respect to time; but it is unlike other regulations traditionally cast as "time, place, and manner" restrictions. *See, e.g., Brown v. Louisiana,* 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966) (silent vigil would not interfere with tranquility of

---

(i) A sign political in nature which is inside a building though visible from the exterior; and

(ii) Billboards posted by a person or corporation duly licensed to erect and maintain bill-

boards, provided they are posted in a location in the manner authorized or permitted under other provisions of this article. "Billboard" is defined in paragraph (c) of this article.

public library, but noisy protest could be banned); *Adderly v. Florida,* 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966) (jail grounds not an appropriate forum for civil rights demonstration, but state capitol grounds could not be closed to public protest); *Grayned v. Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) (state could ban noisy protests near school since disruptive of classwork); *Heffron v. International Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981) (state could confine persons soliciting donations for Krishna religion to one location on state fairgrounds).

The 60 day rule, unlike the typical "time, place, and manner" restriction, does not attempt to determine whether and at what times the exercise of First Amendment rights is compatible or incompatible with the normal uses of a particular forum or place. *Grayned v. Rockford,* 408 U.S. 104, 116, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972); *Taxpayers, supra,* at 850. Rather, it imposes a general ban on the posting of signs promoting the candidacy of certain individuals or advocating a certain viewpoint on an upcoming ballot proposition. This ban is in effect everywhere in the city—on sidewalks, parks, and streets, as well as, apparently, on all private property—throughout the year. The ban is temporarily lifted for only a two-month period prior to an election and is reimposed in its wake. Such a pervasive restriction, which singles out political signs for special treatment, is properly analyzed under the test outlined in *Rosen, supra,* and reaffirmed by the Ninth Circuit in the *Taxpayers* case.

One must begin, therefore, with the proposition that the Antioch ordinance, which explicitly restricts and regulates a form of political speech, is presumptively unconstitutional. A heavy burden falls on the city to justify its regulation. Its regulatory goal must not only be a "weighty" governmental interest, but the city must show that no less restrictive alternative can be crafted which will promote that interest in a less onerous fashion.

With these governing principles in mind, the Court turns to the regulation before it. Two specific challenges are made to the Antioch law. First, the ordinance, by creating a classification based on the content or message of the communication conveyed on signs to be posted in the city, is attacked as violating the Fourteenth Amendment's guarantee of equal protection. Second, the local law is challenged as incompatible with the First Amendment's guarantee of freedom of speech because it imposes restrictions on one important medium which candidates and advocates use to inform the public about elections for political office and about state referenda and initiatives— the temporary political sign. Each of these issues will be considered in turn.

### III. *Equal Protection*

■ The Supreme Court recently gave extensive consideration to the question whether a law which accords disparate treatment to commercial and to noncommercial speech impermissibly discriminates on the basis of content. *Metromedia, Inc. v. San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). The Court reviewed an ordinance of the City of San Diego which permitted a business to erect an on-site billboard identifying its goods and services, but prohibited all off-site billboards. The local law contained a number of exceptions to the general ban on off-site billboards, including one exempting "temporary political campaign signs" erected no earlier than 90 days before an election. Although the San Diego ordinance spoke of temporary campaign "signs," the California Supreme Court provided a narrowing definition which limited the terms of the ordinance to permanent, fixed structures displaying advertisements, *i.e.,* to billboards. *Metromedia, Inc. v. San Diego,* 26 Cal.3d 848, 164 Cal.Rptr. 510, 513 n. 2, 610 P.2d 407 (1980).

The San Diego law was invalidated in a 6–3 decision which generated five separate opinions. A plurality of Justices found that the ordinance impermissibly discriminated by classifying signs with respect to the content of the message conveyed and inverted

the First Amendment "by affording a greater degree of protection to commercial than to noncommercial speech." *Metromedia, Inc. v. San Diego,* 453 U.S. 490, 513, 101 S.Ct. 2882, 2895, 69 L.Ed.2d 800 (1981).[3] The plurality, in remanding the case to the California Supreme Court for a possible limiting and saving construction of the ordinance, explained that the San Diego law could only be saved by limiting its reach to commercial speech; it was fatally defective as applied to political or ideological speech.[4] On remand, the California Supreme Court declined to provide a narrowing construction on grounds that to do so would judicially rewrite the local law. The California Court noted that the political sign exception would be unnecessary in an ordinance limited to commercial speech. *Metromedia, Inc. v. San Diego,* 32 Cal.3d 180, 185 Cal.Rptr. 260, 265, 649 P.2d 902, 907, (Cal.Sup.Ct., 1982).

The standard for analyzing equal protection in the First Amendment area was stated by the Court in *Police Department v. Mosley,* 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972), a case striking down an ordinance which generally banned picketing at a school but created a special exception for labor picketing.

> [U]nder the Equal Protection Clause, not to mention the First Amendment itself, government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or controversial views .... Selective exclusions from a public forum may not be based on content alone, and may not be justified by reference to content alone.

*Id.* at 96, 92 S.Ct. at 2290.

■ Laws aimed at controlling the non-communicative aspects of speech must reg-

ulate evenhandedly; those which selectively discriminate on the basis of content or subject matter offend the Equal Protection Clause. *Linmark Associates v. Willingboro,* 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977) (township ordinance prohibiting posting of "For Sale" and "Sold" signs to prevent white flight selectively and impermissibly bans signs based on content); *Cary v. Brown,* 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980) (differential treatment of labor and nonlabor picketing impermissibly accords preferential treatment to views on one subject); *Erznoznik v. Jacksonville,* 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975) (law prohibiting drive-ins from showing films with nudity invalidated; government may not selectively shield public from certain kinds of speech that may be more offensive than others); *Consolidated Edison v. Public Service Comm'n of New York,* 447 U.S. 530, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980) (ban on bill inserts discussing controversial issues of public policy such as nuclear power not content neutral even though it suppressed both pro and con points of view; invalidated as an impermissible restriction based on message and subject matter).

A few cases have approved regulations which differentiate on the basis of subject matter. In *Lehman v. Shaker Heights,* 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974), the Court upheld an ordinance banishing political signs from city-owned buses. And in *Greer v. Spock,* 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976), a regulation prohibiting partisan political speeches on a federal military base was sustained. The *Metromedia* plurality distinguished these cases as turning on "unique fact situations involving government-created fo-

---

**3.** Chief Justice Burger, dissenting separately in *Metromedia,* argued vigorously against using the equal protection rationale to invalidate the ordinance. He found the law to be "essentially neutral" because San Diego had not attempted to censor or suppress any particular viewpoint or ideological message. *Metromedia, supra,* 453 U.S. at 561–69, 101 S.Ct. at 2920–24.

**4.** Two other Justices, concurring in the judgment invalidating the San Diego ordinance,

would have done so on broader First Amendment grounds. Justices Blackmun and Brennan would have simply reversed the California Supreme Court's decision upholding the ordinance on grounds that the city had failed to justify the substantial restrictions imposed on First Amendment rights. *Metromedia, Inc. v. San Diego,* 453 U.S. 490, 521–40, 101 S.Ct. 2882, 2899–09, 69 L.Ed.2d 800 (1981).

rums . . . ." *Metromedia, Inc. v. San Diego,* 453 U.S. 490, 514 n. 19, 101 S.Ct. 2882, 2896 n. 19, 69 L.Ed.2d 800 (1981). Chief Justice Burger, dissenting in *Metromedia* found the *Lehman* principle, permitting a city to exclude all political advertisers, to be applicable to the San Diego ordinance, so long as no particular point of view or issue of public debate is censored. *Metromedia, supra,* 453 U.S. at 568 n. 8, 101 S.Ct. at 2889 n. 8.

The Antioch political sign ordinance is content neutral in the sense that it does not discriminate among political messages. But it imposes severely restrictive time limits on the posting of political signs—limits not imposed, for example, on temporary signs advertising upcoming commercial, charitable, or civic events. By singling out political signs for restrictive treatment, the Antioch ordinance clearly conflicts with the *Metromedia* plurality and the *Mosley* line of cases.[5] Commercial speech, although subject to other limitations in the city's municipal sign ordinance, is merely regulated in Antioch; political speech is outlawed except during the sixty day period before an election.

The Antioch ordinance, by imposing specially restrictive treatment to political signs, unconstitutionally discriminates in the exercise of First Amendment rights in the setting where they have their "most urgent application . . . the conduct of campaigns for political office." *Monitor Patriot Co. v. Roy,* 401 U.S. 265, 272, 91 S.Ct. 621, 625, 28 L.Ed.2d 35 (1971).

## IV. *First Amendment*

■ Apart from its shortcomings under the equal protection principle of the plurality in *Metromedia,* the Antioch ordinance must fail because the city has not sustained its heavy burden of justification under the First Amendment. The city has not shown that its ordinance is the least drastic means of protecting its governmental interest under the test announced by the Ninth Circuit in *Rosen, supra.*

Each medium of communication offers special advantages to those seeking to convey a message and presents special regulatory problems to local governments seeking to mitigate the negative spillover effects that the medium may have on the rest of the community. Courts have stressed the uniqueness of each medium of expression in striving to find the proper accommodation of First Amendment values and other societal interests. "The moving picture screen, the radio, the newspaper, the handbill, the sound truck and the street corner orator have differing natures, values, abuses, and dangers. Each, in my view, is a law unto itself . . . ." *Kovacs v. Cooper,* 336 U.S. 77, 97, 69 S.Ct. 448, 458, 93 L.Ed. 513 (1949) (Jackson, J.) We deal in this case with the temporary political sign, a medium with its own special virtues and vices.

The question whether durational limits on the posting of temporary political signs unnecessarily restrict the exercise of First Amendment rights has not been decided by this Circuit or by the U.S. Supreme Court. The *Metromedia* case did not directly decide whether it is constitutional to place time limits on political advertisement using temporary signs. The majority of Justices rejected the restrictions imposed by the ordinance at issue there on political and ideological speech. But the San Diego ordinance regulated billboards.[6] Permanent, fixed structures like billboards are a medi-

---

**5.** *See also Aiona v. Pai,* 516 F.2d 892 (9th Cir.1975) (Hawaii statute banning movable political signs but not commercial signs from sidewalks violates equal protection); *Orazio v. Town of North Hempstead,* 426 F.Supp. 1144 (E.D.N.Y.1977) (ordinance limiting posting of political wall signs to six weeks before election impermissibly discriminates on the basis of political content); *John Donnelly & Sons v. Campbell,* 639 F.2d 6 (1st Cir.1980), aff'd, 453 U.S. 916, 101 S.Ct. 3151, 69 L.Ed.2d 999 (1981) (state law banning billboards with limited ex-

ceptions imposed greater restrictions on ideological than commercial speech).

**6.** The Antioch ordinance specifically exempts billboards from its political sign regulations. Antioch, California Municipal Code § 9–5.-1115(b)(7)(ii) (1979) (amended 1981). And only outdoor political signs are subject to the 60 day rule. Antioch, California Municipal Code § 9–5.1115(b)(7)(i) (1979) (amended 1981).

um different from small, detachable political signs and present different regulatory problems. The Court of Appeals twice made passing reference to such time limits in other cases dealing with local sign ordinances, apparently considering them unobjectionable in the context of these cases. *See Baldwin v. Redwood City,* 540 F.2d 1360, 1370 (9th Cir.1976); *Verrilli v. City of Concord,* 548 F.2d 262, 265 (9th Cir.1977). But it has not had occasion to consider fully the countervailing policy arguments and conflicting interests which must be weighed in determining whether a 60 day rule represents a fair and reasonable accommodation of the city's interest in protecting its aesthetic appearance and the public's interest in full and vigorous debate of political issues.[7]

Antioch enacted the 60 day rule in order to keep the community's streets, sidewalks, parks, and business and residential districts attractive, clean, and visually uncluttered. The governmental interest advanced is aesthetics and concern for visual amenities in the community. The legitimacy of this governmental objective is not disputed. *See Taxpayers for Vincent v. Members of City Council,* 682 F.2d 847, 851–52 (9th Cir.1982); *Baldwin v. Redwood City,* 540 F.2d 1360, 1370 (9th Cir.1976).

But this particular ordinance, banning the posting of temporary political signs everywhere in the city for all but a 60 day period before an election, is not the sort of narrowly drawn, sufficiently detailed restriction which can pass constitutional muster. It does not adequately accommodate its aesthetic and environmental goals to the public's right to be informed about upcoming elections.

The temporary political sign offers special advantages to the candidate seeking public office and to the advocate promoting a particular position on a state ballot measure. These signs are a relatively inexpensive means of campaigning. Their use can be localized so that certain areas which the advocate wishes especially to reach may be targeted. A candidate or partisan can use the temporary sign to place a name or an issue before the public. In a campaign for political office, political posters can be effectively utilized to build up the candidate's name recognition and to establish him as a serious contender. The temporary political sign has special value to the non-incumbent or relatively unknown candidate who can use the signs to identify his name among the electorate. The less well-known candidate can test the waters to see whether his candidacy is viable before going to more expensive media such as television or radio.

As the Ninth Circuit noted in *Baldwin v. Redwood City,* 540 F.2d 1360, 1368 (9th Cir. 1976), in striking down an ordinance which, among other things, limited the aggregate area of temporary signs allowed on a parcel of land and banned them from residential areas altogether:

> [M]eans of political communication are not entirely fungible; political posters have unique advantages. Their use may be localized to a degree that radio and newspaper advertising may not. With the exception of handbills, they are the least expensive means by which a candidate may achieve name recognition among the voters in a local election.

Although the Antioch ordinance does not bar all campaigning outside the sixty day period, it does severely restrict the use of one important vehicle for political advertisement, the temporary sign. The alternative means for informing the voters in Antioch—newspapers, radio, television, and door-to-door solicitation—may not be satisfactory substitutes as they may be more costly[8] and perhaps less effective if not preceded by a vigorous sign campaign. *See*

---

7. In its recent decision in *Taxpayers, supra,* the Ninth Circuit invalidated, on First Amendment grounds, an ordinance of the City of Los Angeles prohibiting the posting of signs on sidewalks, curbs, posts, telephone poles and other public objects. *Contra, Sussli v. City of San*

*Mateo,* 120 Cal.App.3d 1, 173 Cal.Rptr. 781 (1981).

8. In the Joint Statement of Facts, all parties to the suit stipulated to the following: "Political signs can constitute an important element in many political campaigns in California and of-

*Linmark Associates, Inc. v. Willingboro,* 431 U.S. 85, 93, 97 S.Ct. 1614, 1618, 52 L.Ed.2d 155 (1977); *Baldwin v. Redwood City, supra,* at 1368.

Other courts have found ordinances which impose time limits on the posting of temporary political signs to be unconstitutional. A state appellate court in Oregon struck down a statute limiting the right to erect temporary political signs on land bordering state highways to 60 days before an election. *Van v. Travel Information Council,* 52 Or.App. 399, 628 P.2d 1217 (1981). While recognizing the legitimacy of the state's interest in the beauty of its highways, the Oregon court found that this interest did not sufficiently justify the restrictions imposed on political speech. The court stated:

> The process of acquainting the public with new candidates is a slow one. Two months is simply not enough time to allow a relatively unknown person to achieve household familiarity.

*Id.* at 413, 628 P.2d at 1226.

A district court in New York, considering a similar ordinance which limited the posting of "political wall signs" to six weeks prior to an election, invalidated the rule on equal protection grounds. *Orazio v. Town of North Hempstead,* 426 F.Supp. 1144 (E.D.N.Y.1977). Addressing the inherent public policy problems associated with the imposition of time limits on political advertisement, the *Orazio* court noted:

> Defendants ... assert that time restrictions on political wall signs are necessitated by the fact that politics is a temporary business. Whether temporary or not, politics is an important business and it is difficult to see what governmental interest is served by placing time limits on the public's opportunity to be informed about political candidates who are seeking public office or organizations which support them.

*Id.* at 1149.

■ These precedents are persuasive. The city has failed to show that its legiti-

mate interest in maintaining a clean, litter-free, visually attractive community justifies placing time limits on the posting of political signs but not on temporary signs that convey commercial messages or ideological messages unrelated to an upcoming election. Nor has the city shown that this particular time period of sixty days, even if evenhandedly applied to all temporary signs, reasonably and adequately provides for the exercise of First Amendment rights. Before the city may impose durational limits or other restrictions on political advertising within its community to advance aesthetic goals, it must show that it is "serious and comprehensively addressing aesthetic concerns with respect to its environment." *Taxpayers for Vincent v. Members of City Council,* 682 F.2d 847, 852 (9th Cir.1982) (quoting *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 530–31, 101 S.Ct. 2882, 2904, 69 L.Ed.2d 800 (1981).

### V. Less Drastic Alternatives

This Court is sensitive to the need for judicial restraint in intruding on the exercise of the police power by local governments to regulate land uses in the interest of public safety, health, morality, peace and quiet, and the general welfare. Temporary political signs, while possessing unique advantages as a means for informing voters about candidates and public issues, may also pose special problems to a city in its attempts to maintain aesthetic standards. Because of their eye-catching colors and the profusion in which they are sometimes posted, political signs may convey their message in a strident or discordant fashion. *See Ross v. Goshi,* 351 F.Supp. 949, 953–54 n. 13 (D.Hawaii 1972). If completely uncontrolled, they could subject the community to visual blight and pollution.

However not all efforts to regulate temporary signs will necessarily be invalid. In its recent opinion in *Taxpayers, supra,* the

---

fer a relatively effective and inexpensive means by which little-known candidates can achieve

name recognition among the electorate."

Ninth Circuit has pointed the way toward less restrictive alternatives available to city government:

> Instead of a general ban, the City might regulate the size, design, and construction of the posters ... institute clean up or removal requirements, ... or provide more stringent regulations for the areas of the City more in need of protection. Moreover, the City might specifically prohibit the erection of signs that obscure hydrants, traffic signs, and signals, or that block motorists' line of sight. We also think it clear that the City might prohibit the posting of signs on trees or shrubs.

*Id.* at 852–53 (citations omitted).

## VI. *Conclusion*

For the reasons stated the City of Antioch's 60 day time limit on the posting of political signs is unconstitutional. The motion for a permanent injunction against enforcement of the ordinance is granted. All other relief is denied. The parties will bear their own costs.

IT IS SO ORDERED.