**Walter F. TAUBER, M.D. and John J. Fitzgerald, Plaintiffs,**

v.

**TOWN OF LONGMEADOW, Defendant.**

**Civ. A. No. 88–0174–F.**

United States District Court, D. Massachusetts.

Oct. 7, 1988.

Alan M. Katz, Katz, Sasson & Hoose, Springfield, Mass., William C. Newman, Civil Liberties Union of Massachusetts, Northampton, Mass., for plaintiffs.

David J. Martel, Doherty, Wallace, Pillsbury & Murphy P.C., Springfield, Mass., for defendant.

## MEMORANDUM AND ORDER

FREEDMAN, Chief Judge.

## I. INTRODUCTION

This case is before the Court on plaintiffs' motion for a preliminary injunction to allow them to post political signs on their private property in support of candidates running for President of the United States. Plaintiffs allege that the act of displaying

such signs is illegal under the Town of Longmeadow's general and zoning by-laws, and that the threat of prosecution deprives them of valued First Amendment rights. Plaintiffs' motion was unopposed by the defendant. Pursuant to this Court's discretion under Fed.R.Civ.P. 65(a)(2), and in light of the short time remaining before the national election, the Court advanced and consolidated trial on the merits with the preliminary injunction hearing.

For reasons stated by the Court at the preliminary injunction hearing and expanded upon below, this Court will allow plaintiffs' motion for a preliminary injunction and, with the publication of this opinion, makes such preliminary· relief permanent. The Court will also allow plaintiffs' request for declaratory relief, and finds that Article 6, Chapter 300, Section 314 of Longmeadow's General By-Laws, entitled "Billboards, Signs and Other Advertising Devices," and Article 9, Section 1.2g of Longmeadow's Zoning By-Laws are unconstitutional to the extent that they unreasonably restrict the posting of political signs or other protected expression in the Town of Longmeadow.

## II. SUMMARY OF THE FACTS

The facts of this case are easily stated. The posting of signs in the Town of Longmeadow is governed by two separate by-laws. Article 6, Chapter 300, Section 314 of the General By-Laws states as follows:

No billboard, sign or other advertising device shall be posted, erected, displayed or maintained in the Town of Longmeadow on any public way or on private property within public view from any highway, public park or reservation except as the same shall be permitted under the provisions of the statutes of the Commonwealth of Massachusetts and rules and regulations adopted thereunder, or as may be permitted under the provisions of this section....

The exceptions provided for by the Town of Longmeadow are instructive. Subparagraph (a) permits residents to put out a sign "showing name and street number only...." However, if the resident is a "physician, surgeon, dentist, lawyer, accountant, or architect," the sign may also indicate the resident's profession. In addition, temporary signs relating to the proposed sale or rental of real property are allowed.

Subparagraph (b) permits and sets forth the conditions for on-site business signs, while subparagraph (c) outlines an application process to the Board of Appeals for additional business signs under (b). Subparagraph (d) permits the installation of traffic signs by the Board of Selectmen.

The other relevant regulation is contained in Article 9, Section 1.2g of Longmeadow's Zoning By-Laws, which states similar provisions:

A sign may be erected and maintained in any zone as shown on the Zoning Map of the Town, showing name and street number only, which is affixed to the dwelling or attached to a suitable support. In the case of a physician, surgeon, dentist, lawyer, accountant, engineer or architect, such sign may show, in addition to the name and street number, the class of profession. Such sign shall not exceed one square foot in area, or two feet in linear dimension. A temporary sign relating to proposed sale or rental of a lot of real property, and any buildings thereon, may be displayed but may not exceed four square feet.

No other billboard, sign or other advertising device shall be posted, erected, displayed or maintained in the Town of Longmeadow except as the same may be permitted under the provision of the statutes of the Commonwealth of Massachusetts and rules and regulations adopted thereunder, or as may be permitted under the provision of Section 117-A of the General By-Laws of the Town of Longmeadow, or as may be permitted by this Paragraph 1.2g, or by Article IV, Section D, Paragraph 4(b) and 4(c) of this Zoning By-Law.

On June 30, 1988, the Longmeadow Town Meeting considered an amendment to the General By-Laws submitted by plaintiff Tauber. Tauber's amendment would have specifically allowed the display on pri-

vate property of signs for candidates or issues of general concern, and provided for the two-week display of signs advertising non-profit or political activities or functions. *See* Article 18, Longmeadow Town Meeting Warrant (June 30, 1988). That measure was defeated by a majority of those present and voting. On September 7, 1988, the plaintiff filed suit in this Court.

At the preliminary injunction hearing, defendant's counsel informed the Court that a similar amendment will be submitted at the next Longmeadow Town Meeting. However, counsel could not provide a specific date on which the Town planned to meet, other than to say that it would be sometime in October 1988.

## III. DISCUSSION

In light of this Court's decision to consolidate the trial on the merits with the preliminary injunction hearing, the Court will concentrate its discussion on the merits of the plaintiffs' underlying case. However, the Court notes in passing that the plaintiffs did meet the four requirements for a preliminary injunction as set forth in *Agency Rent–A–Car, Inc. v. Connolly*, 686 F.2d 1029, 1034 (1st Cir.1982).

Since defendant town presented no opposition to the plaintiffs' motion, and in fact recognized the constitutional defects inherent in the above by-laws, this Court's discussion of the merits will be brief. However, in light of the fact that Longmeadow is in the process of redrafting its by-laws, the Court feels a review of the applicable case law would be helpful.

This case involves balancing the aesthetic interests of the Town of Longmeadow against the First Amendment rights of the plaintiffs. As an initial proposition, it is true that the appearance of a city or town is a legitimate governmental interest. Courts have allowed incidental restrictions on the exercise of First Amendment rights in instances where the governmental interest is "substantial in relation to the restrictions imposed, and if the restrictions are no greater than necessary or essential to the protection of the governmental interests." *Baldwin v. Redwood City*, 540 F.2d 1360,

1365 (9th Cir.1976), and cases cited. The Supreme Court has gone so far as to say that " '[T]he city's interest in attempting to preserve [or improve] the quality of urban life is one that must be accorded high respect.' " *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 807, 104 S.Ct. 2118, 2130, 80 L.Ed.2d 772 (1984) (quoting *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 71, 96 S.Ct. 2440, 2452–53, 49 L.Ed.2d 310 (1976)).

Other recent Supreme Court decisions suggest the boundaries of the restrictions which may be placed on First Amendment rights. The classic formulation is that a government may regulate the "time, place or manner" of speech if a significant governmental interest is advanced. The regulation must not be concerned with the content of the speech, and there must be "ample alternative channels for communication of the information." *Metromedia v. City of San Diego*, 453 U.S. 490, 516, 101 S.Ct. 2882, 2897, 69 L.Ed.2d 800 (1981). "Above all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Department of Chicago v. Mosley*, 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972). A government's ability to regulate speech "significantly increases as the mode of expression moves from pure speech to speech combined with conduct." *Baldwin*, 540 F.2d at 1366 n. 10 (citing *California v. LaRue*, 409 U.S. 109, 117, 93 S.Ct. 390, 34 L.Ed.2d 342 (1973)). The *Baldwin* court stated, however, and this Court agrees, that the posting of a temporary political sign is virtually pure free speech. *Id.* at 1366.

However, "even pure political speech, which is entitled to the highest First Amendment protection, 'may be subject to reasonable time, place and manner regulations that are content-neutral, serve a significant governmental interest, and that leave open ample alternative channels for communication of the information.' " *Frumer v. Cheltenham Township*, 545 F.Supp. 1292 (E.D.Penn.1982) (quoting *American Future Systems, Inc. v. The*

*Pennsylvania State University,* 688 F.2d 907, 915 (3d Cir.1982)).

■ The Longmeadow by-laws do not pass constitutional muster because they are impermissibly concerned with content. In residential neighborhoods, name and street number signs are permitted, and certain professions may be listed. Temporary signs may be posted to advertise property for sale or rent. It is also permissible to erect advertising signs in commercial zones. However, no provision is made for the erection of signs with political content. By favoring commercial speech over non-commercial speech, the Longmeadow by-laws clearly violate the First Amendment of the Constitution. *See Metromedia,* 453 U.S. at 512–13, 521, 101 S.Ct. at 2894–95, 2899–2900; *Matthews v. Town of Needham,* 764 F.2d 58, 61 (1st Cir.1985); *Meros v. City of Euclid,* 594 F.Supp. 259 (N.D. Ohio E.D.1984), *vacated as moot,* 780 F.2d 1020 (6th Cir.1985). The problem faced by the Town, admittedly without much guidance from the courts, is what regulations are reasonable time, place and manner restrictions on temporary political signs.

A variety of regulatory controls came under scrutiny in *Baldwin.* First, the Ninth Circuit reviewed the size limitations placed on temporary political signs by Redwood City, California. Section 3.137(a) of the Redwood City general ordinances restricted the size of a single sign to a maximum of sixteen square feet and the aggregate area of signs on a single parcel to eighty square feet. The court concluded that "[n]either limitation significantly deters the exercise of First Amendment rights...." *Id.* at 1369. Such restrictions contribute to the appearance of the community while only minimally burdening free speech. *Id.* By contrast, two Concord, California statutes limiting single sign size to four square feet and aggregate sign size to sixty-four square feet were found to be unconstitutional, at least in part as a result of the town's failure to show that the public interest could not be protected in a less restrictive manner. *Verrilli v. City of Concord,* 548 F.2d 262, 265–66 (9th Cir. 1977).

The *Baldwin* court did, however, invalidate a provision that limited signs for particular candidates or issues to an aggregate of sixty-four square feet for the entire city. The ordinance was held to impermissibly regulate content by focusing on candidates and issues, and to dramatically limit political expression. *Baldwin,* 540 F.2d at 1369.

Other regulations examined and invalidated by the *Baldwin* court include the requirement of an application, a $1.00 inspection fee, and a $5.00 removal deposit per sign. In each case, the court found that the "burden is so great as to inhibit the use of this means of communication." *Id.* at 1371.

One regulation not challenged by the plaintiffs in *Baldwin* governed the length of time that temporary signs could remain on private property. Section 3.135 of the Redwood City Ordinances limited the posting of signs to sixty days, including no more than ten days after the event advertised on the sign. *Id.* at 1362–63 n. 1, 1370. In discussing the aesthetics of temporary signs, the Ninth Circuit cited the time limits as a way of "diminishing the problem." *Id.* at 1370. Time limitations were also held to be a less restrictive means of protecting the public's aesthetic interests in *Verrilli,* 548 F.2d at 265. Counsel should be aware, however, that a later United States District Court opinion in the same circuit as *Baldwin* and *Verrilli* specifically invalidated a similar sixty-day restriction. *Antioch v. Candidates' Outdoor Graphic Service,* 557 F.Supp. 52 (N.D.Cal.1982). In that case, the District Court analyzed Antioch's ordinance as a year-round ban which was temporarily suspended for sixty days before each election. *Id.* at 55. In light of the heavy burden placed on speech, the court concluded that the city must show not only that the regulation is directed at a "weighty" governmental interest, but also that no less restrictive alternative exists. *Id.* at 56. Concluding that the town failed to do so, the court held that the statute does not "adequately accomodate [sic] its aesthetic and environmental goals to the

public's right to be informed about upcoming elections." *Id.* at 59.

At this time, the Court of Appeals has not ruled on what sign restrictions would be permissible under First Amendment requirements in this Circuit. However, based on the case law from other circuits, this Court suggests that reasonable restrictions on the size and construction of signs would be permissible.[1] For example, height and square footage might be limited in order to prevent interference with traffic sight lines. The amount of square footage on any one lot might be limited to promote aesthetic goals. Blinking or lit signs might be limited to commercial zones.

■ The question of time restrictions on the display of signs is made more difficult by *Antioch.* This Court is not convinced that a thirty- or sixty-day durational limit is *per se* unconstitutional (although upon consideration of the issue, the Court believes that a thirty-day limit would be less likely to survive review).[2] However, the Court does agree with the *Antioch* court that before a town may impose a durational limitation on aesthetic grounds, "it must show that it is 'serious[ly] and comprehensively addressing aesthetic concerns with respect to its environment.'" *Id.* at 60 (citing *Taxpayers for Vincent v. Members of City Council,* 682 F.2d 847, 852 (9th Cir.1982)). If the Town of Longmeadow feels that a durational limitation is a necessary part of the new sign by-laws, then the citizens of the Town should be aware of the rigorous standard under which such a provision might be reviewed.

The Court hopes that this discussion of the relevant case law, while *dicta,* is helpful in presenting the guidelines of temporary sign regulation. In view of the fact that the only case law directly on point in

this Circuit is *Matthews,* which simply invalidates outright bans on temporary political signs, there is considerable leeway available to the Town of Longmeadow in the construction of its regulatory scheme.

The plaintiffs' motion for a preliminary injunction to prevent enforcement of the Town of Longmeadow's general and zoning by-laws with respect to the posting of temporary political signs is hereby ALLOWED. Plaintiff's motion for a declaration that the by-laws are unconstitutional insofar as they prevent the posting of temporary political signs is ALLOWED. Accordingly, the Clerk of the Court will enter judgment for the plaintiffs.

It is so Ordered.

---

1. The following examples are intended to be illustrative only; counsel are of course free to draw their own conclusions from the case law in light of the lack of firm guidance in this Circuit. This Court understands and "is sensitive to the need for judicial restraint in intruding on the exercise of the police power by local governments...." *Antioch,* 557 F.Supp. at 60.

2. The Court notes that virtually every municipality has by-laws which limit the posting of

signs in residential areas. If a municipality is unable to set any durational limits on temporary political signs, then residents would be able to virtually ignore a legitimate goal of municipal zoning ordinances. In its review of the cases discussed *infra,* the Court saw nothing which would require a city or town to totally defer its legitimate police powers to the First Amendment.