**Richard L. VERRILLI, Plaintiff-Appellant, Cross-Appellee,**

v.

**CITY OF CONCORD, Defendant-Appellee, Cross-Appellant.**

**Nos. 75–1542, 75–2157.**

United States Court of Appeals, Ninth Circuit.

Jan. 3, 1977.

Wayne Canterbury (argued), of Graham & James, San Francisco, Cal., for appellant/cross-appellee.

Mark Commerford, Asst. City Atty. (argued), Concord, Cal., for appellee/cross-appellant.

Before MERRILL, KILKENNY and ANDERSON, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

Plaintiff-Appellant Richard L. Verrilli appeals from a district court determination upholding the constitutionality of certain city ordinances which placed restrictions on political campaign signs. The City of Concord has cross-appealed those portions of the district court decision declaring other ordinances unconstitutional.

At the outset we must determine the proper tests to be applied to judge the validity of the various ordinance restrictions. We are aided by this court's recent decision in *Baldwin v. Redwood City et al.,* 540 F.2d 1360 (9th Cir. 1976) (*reh. den.* Sept. 14, 1976, *pet. for cert.* filed Oct. 12, 1976, 45 L.W. 3307), which dealt with a similar regulatory scheme. The *Baldwin* court stated:

"The following general rule may be drawn from decisions in which state and municipal enactments have been weighed against the First Amendment: Incidental restrictions upon the exercise of the First Amendment rights may be imposed in furtherance of a legitimate governmental interest if that interest is unrelated to suppression of expression and is substantial in relation to the restrictions imposed, and if the restrictions are no greater than

necessary or essential to the protection of the governmental interests." (citing *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 2453, 49 L.Ed.2d 310 (1976) (Powell, J., concurring); *Procunier v. Martinez*, 416 U.S. 396, 409–15, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); *Quaker Action Group v. Morton*, 170 U.S.App.D.C. 124, 516 F.2d 717, 725 (1975), 540 F.2d at 1365. We agree with this statement of the law and the ordinances in question will be analyzed in light of this standard.

I

The district court upheld the validity of § 7417(*o*)(3)(c) [1] and § 7417(*o*)(3)(d) [2] which required that any person posting signs deposit a $100.00 cash bond with the city to insure removal of the signs and also that any sign posted found not to be in accordance with the ordinance would be deemed a public nuisance.

■ We are bound by the points decided in *Baldwin v. Redwood City, supra*, which held invalid portions of a similar statutory

scheme.[3] The ordinance there required a $5.00 deposit for each sign posted and that the building inspector may remove any sign not found to be in compliance with the ordinance. The same reasoning utilized by the *Baldwin* court applies here with respect to § 7417(*o*)(3)(d) (the $100.00 cash bond) and requires reversal of the district court's decision upholding the validity of that section of the ordinance.

■ However, we uphold the district court's finding of validity as to § 7417(*o*)(3)(c). In *Baldwin*, removal of offending signs was to be accomplished summarily and without notice. Here, the Concord ordinance directly *implies* notice to the owner prior to removal of the sign by city officials. While the Concord ordinance declares offending signs to be a "public nuisance," it is saved by the language permitting or requiring the candidate or property owner to remove the sign "and, *upon their failure to do so*, by the City Building Official." (emphasis supplied). This language distinguishes § 7417(*o*)(3)(c) of Concord from the summary "no notice" provisions of the Redwood City ordinance. We believe it to be proper to indulge the presumption

1. "Section 7417.

    .    .    .    .    .

(*o*) Political Signs.

    .    .    .    .    .

(3) Removal . . .
(c) Any political sign not posted in accordance with the provisions of this Chapter and any political sign which exists in violation of Section 7417, Subsection (*o*)(4) of this Chapter shall be deemed to be a public nuisance and shall be subject to removal by the candidate, property owner, or when a proposition is involved, the person advocating the vote described on the sign and, upon their failure to do so, by the City Building Official."

2. "Section 7417.

    .    .    .    .    .

(*o*) Political Signs.

    .    .    .    .    .

(3) Removal . . .
(d) Prior to posting political signs, the candidate, his representative or the person or organization intending to post signs for or against a ballot measure shall post a $100.00 cash bond with the City Finance Director. Only one such bond is required for any candidate for election or for the respective proponents or opponents to a ballot measure. Said bond may be re-

turned to the person who posted it when the City Building Official certifies to the Finance Director that the respective signs erected by or on behalf of the person posting the bond, have been removed."

3. "Section 3.136 . . .
Every application for a temporary sign shall be accompanied by a cash deposit of five dollars for each temporary sign proposed to be erected to assure removal of such signs in accordance with the provisions of section 3.135. On the failure to remove the signs as required by section 3.135, the deposit shall be forfeited to the city; otherwise, the building inspector shall cause the deposit to be refunded. In lieu of a cash deposit, the building inspector may accept a bond, executed by a corporate surety authorized to do business in the state and conditioned upon removal of the temporary signs in compliance with the provisions of section 3.135."
Section 3.89 provides in pertinent part:
". . . In addition, the building inspector may summarily, without notice, remove any temporary sign which is erected, placed or maintained in violation of this article in any zoning district."

that Concord officials will abide by the fair and reasonable implication of their own regulatory scheme. The evidence adduced indicates that they do. This interpretation of the ordinance reaches a proper accommodation of the conflicting interests of the parties. Moreover, the situation here present is expressly contemplated by the language in *Baldwin, supra,* at 1374.

## II

The City of Concord has appealed the judgment, declaring the following ordinances unconstitutional:

Section 7417(*o*)(2)(a) provides:

"Political signs are permitted in single family residential districts only upon which a residence is located without prior approval, provided that the dimension of such signs shall not exceed a maximum area of four (4) square feet with maximum dimensions of two (2) feet, with only one (1) sign per office or measure to be placed per each parcel of land as designated in the current Parcel Map Book of the City Assessor regardless of the size of such parcel."

Section 7417(*o*)(2)(f) provides:

"Political signs shall be self-contained and free standing and shall not be attached to any structure, except that the sign may be placed in a window."

Section 7417(*o*)(4)(c) provides:

"A sign or signs not exceeding a total aggregate of sixty-four (64) square feet for the entire site, designating the location and name of the campaign headquarters of a candidate or the headquarters of the proponents or opponents for a proposition on the ballot."

■ Analyzing § 7417(*o*)(2)(a), we must again refer to *Baldwin v. Redwood City, supra.* The similar ordinance scrutinized in *Baldwin* limited sign size to 16 square feet while the ordinance under attack here (§ 7417(*o*)(2)(a)) limits sign size to 4 square feet. The *Baldwin* court, in upholding the ordinance, reasoned that the sign limitations did not significantly deter the exercise of First Amendment rights, comparing them to the decibel restrictions upheld in

*Kovacs v. Cooper,* 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed.2d 513 (1949). This reasoning should equally apply here to signs of lesser dimensions as long as the greater limitations are not so restrictive as to foreclose an effective exercise of First Amendment rights. However, the district court specifically found that the city had not attempted to justify its restrictions on the size of the signs. (December 24, 1974, Order, page 3; clerk's record, page 126). The City of Concord has therefore failed to meet its burden demonstrating the necessity of this restriction to further a legitimate government interest. The district court decision that § 7417(*o*)(2)(a) is unconstitutional must be affirmed.

■ The next ordinance declared unconstitutional, § 7417(*o*)(2)(f), was not contained in the regulatory scheme of *Baldwin v. Redwood City, supra.* The district court found that the public's aesthetic interests were adequately protected by the less restrictive provisions of the city code. Specifically, the district court pointed to § 7417(*o*)(2)(c) and § 7417(*o*)(3)(a), which are time limitations, before and after election, that signs may be posted. We adopt in full this reasoning by the district court in affirming the decision that § 7417(*o*)(2)(f) is unconstitutional.

■ The last ordinance declared unconstitutional is § 7417(*o*)(4)(c). Again, *Baldwin v. Redwood City, supra,* reviewed a similar statute and held that the limitations of "the aggregate area of signs on a single parcel to 80 square feet do not offend the First Amendment." (540 F.2d at 1368). The present statute limits the aggregate area to 64 square feet "for the entire site . . . of the campaign headquarters." The district court found that:

"The city's burden under the First Amendment, though, is to demonstrate that regulations otherwise proper, but which infringe upon First Amendment rights, protect important or substantial public interests which cannot be adequately protected by less restrictive regulations. The city has not even attempted to make such a showing, . . . (De-

cember 24, 1974, Order p. 11, clerk's record, p. 134)

The district court properly applied the test set out above and its decision declaring § 7417(o)(4)(c) unconstitutional must be affirmed.

Even though similar ordinances were upheld in *Baldwin*, we cannot equate the "experiences" of Redwood City to those of Concord (540 F.2d at 1369). The district court found that Concord had failed in its burden of proof to identify any legitimate interests to justify the restraints imposed by § 7417(o)(2)(a) and § 7417(o)(4)(c), or to show that such interests could not be "protected by less restrictive provisions." § 7417(o)(2)(f). We cannot take judicial notice that the "experiences" of Concord are the same as Redwood City. The findings made by the district court are not clearly erroneous and must be affirmed. Rule 52(a), Fed.R.Civ.Proc.

### III

■ The City of Concord also appeals the award of attorneys' fees to the plaintiff. The controlling case is *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) which held that the private attorney general theory in awarding attorneys' fees may not be relied upon. The court held that there are only three exceptions to the American Rule of awarding attorneys' fees: (1) statutory authorization of such an award, (2) an award to a party recovering or preserving a fund which benefits others, and (3) where the losing party acts in bad faith. Of course, these exceptions apply in the absence of a contractual agreement between the parties providing for attorneys' fees. It is clear from this record that items (1) and (2) above are not applicable; also, it is clear there is no contractual provision for an award of attorneys' fees. The only theory which would support an award of attorneys' fees is a finding that the City of Concord acted in bad faith.

The district court did reduce its original award of $2,300.00 to $1,000.00, following the court's reconsideration, in light of *Alyeska, supra*. The district court gave no indication of its reasoning in reducing the award. As there is no finding by the district court that the City of Concord did in fact act in bad faith, there is no basis in this record to support an award of attorneys' fees. The case must be remanded back for a determination as to the existence or non-existence of bad faith.

We AFFIRM the district court's finding that § 7417(o)(2)(a), § 7417(o)(2)(f) and § 7417(o)(4)(c) are unconstitutional. We AFFIRM the district court's finding that § 7417(o)(3)(c) is constitutional. We REVERSE the district court's finding that § 7417(o)(3)(d) is constitutional. We remand for the entry of an appropriate judgment consistent with these views. The award of attorneys' fees is VACATED and the case is remanded to the district court for further determinations with respect to an award of attorneys' fees, consistent with the views expressed herein.

KILKENNY, concurring and dissenting.

My dissent is limited to that part of the majority opinion which declares unconstitutional two portions of the ordinance: § 7417(o)(2)(a), the general size and number limitation, and § 7417(o)(4)(c), the size limitation on a headquarters sign.

The majority concedes that similar restrictions were upheld by the court in *Baldwin v. Redwood City*, 540 F.2d 1360 (CA9, 1976), but would distinguish the cases on the theory that the conditions in Redwood City are substantially different from those in the City of Concord. I think this distinction is unsound. The cities are on opposite sides of San Francisco Bay and are somewhat less than sixty miles apart. Moreover, the justifications relied upon in Baldwin—"the appearance of the community," "reducing accumulation of debris," "minimizing traffic hazard," and "other legitimate municipal interests" [540 F.2d at 1369] —were similarly urged by affidavit before the district court here. To this extent, the finding of the district court that the city did not attempt to justify its restrictions is clearly erroneous. F.R.Civ.P. 52(a). The

only factor in *Baldwin* not specifically advanced in the district court here is ". . . Redwood City's experience with the effects of the elements, particularly the wind, upon unreinforced signs of various sizes." 540 F.2d at 1369. The absence of this evidence should not, in itself, be a controlling factor. In any event, I would hold that the court should take judicial notice of the wind factors in the San Francisco Bay area and say there is no substantial difference in the wind hazards experienced in the respective cities. Rule 201(b) of the Federal Rules of Evidence permits this approach. Surely the size of the respective cities[1] has no relevance. Speaking in connection with the similar restrictions in Redwood City,[2] the *Baldwin* court said:

> "Neither limitation significantly deters the exercise of First Amendment rights; they are comparable to the decibel restriction on sound trucks upheld in *Kovacs v. Cooper, supra.* Neither is related in any way to the content of the posters. Their effect upon the quantity of expression is remote. Larger signs may be erected by complying with structural and design requirements applicable to other than temporary signs; and there is nothing in the record to suggest that the numbers of parcels in separate ownership in Redwood City is so limited that the 80 square foot per parcel limit imposes any significant restriction on the total exposure a candidate can obtain. Baldwin himself testified that he used signs slightly smaller than 16 square feet in the Kerwin campaign in 1974 and was satisfied with the size; he also testified that although he had placed more than 80 square feet of signs on a piece of property on occasion, it was improbable that he would want to do so often.

> "Both limitations contribute to the appearance of the community and further other legitimate municipal interests. 'Temporary signs' are not required to

meet design and structural requirements. The 16 square feet limitation on such signs is based upon Redwood City's experience with the effects of the elements, particularly the wind, upon unreinforced signs of various sizes. This legitimate interest might be served as well by slightly less restrictive size limitations, but '[s]uch distinctions in degree become significant only when they can be said to amount to differences in kind.' *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 640, 46 L.Ed.2d 659 (1976). The city officials justify the aggregate sign area limitation of 80 square feet per lot as reducing accumulation of debris and minimizing traffic hazard. *The relationship of the restriction to these interests is attenuated and the unavailability of less restrictive alternatives questionable, but the burden imposed on free speech by this restriction is so minimal that generous allowance may be made for municipal preferences."* [Emphasis added.] 540 F.2d at 1369. The law, as thus enunciated in *Baldwin,* should be applied to the record before us. The Constitution should not be used as a tool to create distinctions where none exist, nor should the appellate courts create lines of authority so indistinguishable that the lower courts are thrown into a state of confusion. Surely, the majority here has not given "general allowance . . . [to the] municipal preferences" expressed by the City of Concord.

I would hold that the city met the tests as outlined in *Baldwin.* If *Baldwin* had been decided and considered at the time of the decision by the district court, I am certain that it would have found these sections constitutional. Otherwise, I concur in the opinion of the majority.

---

1. Redwood City approximately 55,000, Concord approximately 90,000.

2. These restrictions limited ". . . individual signs to a maximum area of 16 square feet

and the aggregate area of signs on a single parcel to 80 square feet . . ." 540 F.2d at 1368.