**CAROLLO v. CITY OF MIAMI, et al.**
Case No. 83-37526 CA 24
Eleventh Judicial Circuit, Dade County
November 15, 1982

Alan Rosenthal, for plaintiff.

Jose Garcia-Pedrosa, City Attorney and A. Quinn Jones III, Deputy City Attorney, for defendants.

EDWARD S. KLEIN, Circuit Judge

This cause having been tried before the Court on November 4, 1983, on Plaintiff's Complaint for Declaratory Relief and Injunction, the Court finds that Section 2025.3.11, Code of Miami[1], is invalid and unenforceable as violative of the First and Fourteenth Amendments to the United States Consititution and Article I, Section 4 of the Florida Constitution.

---

[1]Section 2025.3.11, Code of Miami provides:

> "No sign permit shall be required for temporary campaign signs displayed on private property, in non-residential districts, not exceeding fifteen (15) square feet in sign surface aream and used in connection with political campaigns, provided that all such signs shall exhibit the date of the conclusion of the campaign and shall be removed within three (3) days thereafter. No political campaign sign shall be erected in any residential district."

## Background

Carollo is a resident of the City of Miami ("Miami") and is a candidate for re-election to the position of Miami City Commissioner.

In furtherance of his campaign, Carollo placed approximately two hundred twenty five (225) signs, containing his name and campaign slogan, on privately owned property in Miami. The signs are thirty two (32) square feet in size. Carollo did not apply for, or receive, permits from Miami in connection with the placement of these signs.

On or about October 19, 1983, Carollo received a letter from Miami City Manager, Howard V. Gary ("Gary"), advising him of the Miami ordinance applicable to temporary campaign signs and further indicating that "active enforcement" of the ordinance would commence on October 25, 1983.

Based upon the letter from Gary, Carollo concluded that each of the two hundred twenty five (225) signs he had placed on private property were in violation of the described ordinance. He then filed a Complaint for Declaratory Relief and Injunction seeking a declaration that Section 2025.3.11, Code of Miami is invalid. Carollo further sought, and obtained, a temporary restraining order prohibiting Miami and Gary from enforcing the ordinance, pending further hearing by the Court.

Carollo challenges the provisions of this ordinance which:

1) ban temporary campaign signs on privately owned property;[2] and

2) require a permit and the payment of a minimum fee of Fifteen ($15.00) Dollars per sign[3] for those signs exceeding fifteen (15) square feet in size on privately owned commercial property.

## Applicable Law

The First Amendment to the United States Constitution and Article I, Section 4 of the Florida Constitution guarantee freedom of expression. The United States Supreme Court has held that the conduct of campaigns for political office is entitled to the "fullest and most urgent application" of this constitutional guarantee. See: *Buckley v. Valeo*, 424 U.S. 1

---

[2]Defendants conceded the unconstitutionality of the ban on temporary campaign signs on privately owned residential property.

[3]The evidence established that the applicable permit fee for signs was calculated at Forty ($.40) Cents per square foot of sign area with a minimum fee of Fifteen ($15.00) Dollars per sign.

(1976); *Monitor Patriot Co. v. Roy*, 401 U.S. 265 (1971). This protection specifically extends to political campaign signs. *Baldwin v. Redwood City*, 540 F.2d 1360 (9th Cir. 1976), *cert.* denied, 431 U.S. 913 (1977); *People v. Middlemark*, 420 N.Y.S. 2d 151 (N.Y. 3rd Dist. Ct. 1979); both citing *Ross v. Goshi*, 351 F.Supp. 949 (D.C. Hawaii 1973).

Miami's temporary campaign sign ordinance inhibits the use of political signs by imposing permit and fee requirements. In evaluating the validity of such an ordinance, the Court is required to apply a balancing test:

> "Incidental restrictions upon the exercise of the First Amendment rights may be imposed in furtherance of a legitimate governmental interest if that interest is unrelated to suppression of expression and is substantial in relation to the restrictions imposed, and if the restrictions are no greater than necessary or essential to the protection of the governmental interest." *Baldwin, supra*, citing *Young v. American Mini Theaters, Inc.*, 427 U.S. 50 (1976) (Powell, J., concurring); *Procunier v. Martinez*, 416 U.S. 396, 409-415 (1974); *United States v. O'Brien*, 391 U.S. 367,377 (1968).

Courts have applied this test in evaluating permitting and fee requirements similar to those imposed by Miami. *Baldwin, supra*; *Middlemark, supra*; *Verrilli v. Concord*, 548 F.2d 262 (9th Cir. 1977).[4]

The Miami permitting process and fee requirements are virtually identical to those struck down by the Ninth Circuit Court of Appeals in *Baldwin v. Redwood City, supra*, except they are even more burdensome. The same application form is used for all signs, commercial decorative, political, etc. It requires the applicant to furnish information which is irrelevant to political signs. A permit application must be filed, and the permit fee paid, for each and every sign even if all the signs are identical. The *Baldwin* Court questioned a similar provision:

> "The only aspect of a temporary sign subject to inspection at the outset is its size, which can be verified in a few moments with a tape measure. A $1.00 fee for checking the size of a single poster might be reasonable; but a $5.00 fee for inspecting 500 identical political posters would be essentially arbitrary, bearing no relationship to the cost. *The absence of apportionment suggests that the fee is not in fact reimbursement for the cost of inspection but an unconstitutional tax upon the exercise of First Amendment rights.*" *Baldwin, supra*, at p. 1371. [emphasis supplied].

---

[4]No Florida appellate court has ruled upon the issues presented in this case.

In Redwood City, a candidate was required to pay One ($1.00) Dollar per sign as an inspection fee, and to deposit an additional Five Dollars ($5.00) to insure removal of the signs after the election. Redwood City offered evidence in support of these requirements indicating that the average cost of removal inspection was Ten ($10.00) Dollars per sign and the average cost of inspection was Twenty Five ($25.00) Dollars per sign. The Ninth Circuit declared both fees unconstitutional. *Baldwin, supra.* The burdensonsome nature of the Redwood City fees is insignificant when compared to the *minimum* fee of Fifteen ($15.00) Dollars per sign imposed by Miami. Similar ordinances were invalidated in *Middlemark, supra,* and *Verrilli, supra.*

Carollo testified that approximately 75% of his 225 signs were on commerical property. If Miami's permitting scheme was imposed on these signs, it would cost Carollo more than Two Thousand Five Hundred ($2,500.00) Dollars in permit fees alone.[5] This is unnecessarily burdensome.

Interconnected with the First Amendment issues discussed above are the interests protected by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The Equal Protection Clause requires that any statute which impacts upon First Amendment freedoms be narrowly tailored to the statute's objectives, *Williams v. Rhodes*, 393 U.S. 23 (1968), and not be predicated upon a discriminatory scheme of classification. See: *Middlemark, supra.*

Section 2025, Code of Miami regulates and classifies various categories and types of signs. Specifically, Section 2025.3. *et seq.*, Code of Miami, establishes exemptions from the permit requirements established by Section 2025.2, Code of Miami.

These include:

2025.3.1   *Signs Erected by or on Order of Governmental Jurisdictions.*

2025.3.2   *National Flags and Flags of Political Subdivisions.*

2025.3.3   *Decorative Flags, Bunting, and Other Decorations on Special Occasions.*

2025.3.4   *Symbolic Flags, Award Flags, House Flags.*

2025.3.5   *Address, Notice and Directional Signs, Warning Signs.*

2025.3.6   *Signs on Vehicles*

2025.3.7   *Real Estate Signs.*

---

[5]Carollo testified that the signs, themselves, cost approximately Nine ($9.00) Dollars each to manufacture.

2025.3.8  *Construction Signs; Development Signs When Combined with Construction Signs.*

2025.3.9  *Community or Neighborhood Bulletin Boards, Kiosks;*

The exemption for signs on vehicles (Section 2025.3.6) is illustrative of the discriminatory classification imposed by Section 2025.3.11, Code of Miami. Under this section a political sign exceeding two hundred (200) square feet could be placed on privately owned commercial property without a permit or permit fee, if the sign was attached to a truck or other vehicle parked on the property, and if the vehicle was used for normal transportation. Section 2025.3.6, Code of Miami. The identical sign posted on commercial property without the truck, requires the payment of an Eighty ($80.00) Dollar fee.

The distinctions and classifications created by these exemptions are arbitrary and discriminatory because they favor nonpolitical over political speech. As stated by the Court in *Middlemark, supra.*

"As the code clearly treats non-political advertising less stringently than political advertising, the ordinance pertaining to permits is invalid . . . [T]he mere presence of such permit fees places a chilling effect on the expression of political opinion." *Middlemark, supra,* at p. 154.

### Conclusion

Miami, through its City Manager and Chief Zoning Inspector, cited various interests in support of the temporary campaign sign ordinance, including aesthetics, safety and ensured removal of signs after the election. While these aims are well intentioned and admirable, the permitting and fee requirements imposed by Section 2025.3.11, Code of Miami, do not bear a substantial relationship to the protection of these interests.

Freedom of expression is the cornerstone of our democratic electoral process. Political expression must receive the maximum protection if the electorate is to make informed and responsible choices in the selection of its leaders. Miami has not sufficiently tailored its regulation of temporary campaign signs to avoid arbitrary interference with the free exercise of fundamental First Amendment rights. Accordingly, Section 2025.3.11, Code of Miami, is declared to be invalid and unenforceable under the First and Fourteenth Amendments to the United States Constitution and Article I, Section 4 of the Florida Constitution. Defendants are permanently enjoined from enforcing Section 2025.3.11. The injunction bond previously posted by Carollo is hereby released.