Agnes, A.J.
The plaintiff, Thomas P. Tierney, is a candidate for the Democratic party nomination for Congress in the Fifth Congressional District. He has been certified to appear on the ballot in the Democratic primary election scheduled to take place on September 19, 2000. He has filed a complaint for relief in which he challenges the validity of an ordinance of the defen-. dant City of Methuen entitled “Ordinance Amending the Comprehensive Zoning Ordinance of 1989 — Political Signs” (hereafter, “Ordinance 498”).[1] Ordinance 498 is an amendment to a section of the city’s 1989 zoning law known as “Sign and Illumination Regulations.” Brief of Defendant City in Opposition to Plaintiffs Motion for a Preliminary Injunction at 1 and exhibit A (hereafter, “City Brief’). In particular, the plaintiff alleges that Ordinance 498 is in violation of the First Amendment to the Constitution of the United States because it imposes unlawful restrictions on the dimensions and placement of political signs in the City of Methuen.[2]
BACKGROUND
The record before the court consists of a verified complaint and Affidavits by Gerald J. Deschene, Building Commissioner for the City of Methuen, and Kevin P. Hagerty, Assistant Director for Planning in the Community Development Department of the City of Methuen. Based on the hearing conducted by the court on August 29, 2000, the essential facts are not in dispute.
1. The 1989 Methuen Zoning Ordinance. In 1989, the City of Methuen adopted a zoning ordinance which contains a section known as “Sign and Illumination Regulations.” City Brief at 1 & exhibit A. The ordinance states that one of its purposes is to “regulate signs within the Town of Methuen in order to protect and enhance the visual environment for the safety, convenience, information and welfare of its residents.” City Brief, exhibit A, Section VII-A, para. 1. The regulation requires that most new, renovated or reconstructed signs must conform to its requirements which include filing an application for a permit from the Building *341 Inspector. The application must include the name and address of the owner of the premises where the sign is to be erected and his or her written consent to erection of the sign, the location, position and dimension of the sign, and “such plans, structural drawings and specifications as the Building Inspector may require for temporary examination and permanent record." City Brief, exhibit A, Section VII-C(l)-(3). Under this regulation, the Building Inspector has 14 days in which to act on an application for a permit, and in doing so is required to enforce all applicable provisions of the Building Code and all other applicable laws, ordinances and regulations. City Brief, exhibit A, Section VII-C(4). The electrical inspector also may have to be consulted and give an approval when illumination is involved.
Section VII-(E) of the 1989 regulation deals specifically with “Temporary Signs.” These are divided into three categories: (a) temporary signs erected during construction, (b) temporary “accessory signs” and (c) temporary “non-accessory” signs. City Brief, exhibit A, Section VII-E( 1 )(a)-(c). The distinction between “accessory” and “non-accessory”- temporary signs is based on whether the sign concerns an event or activity not related to the premises (“non-accessory”). City Brief at 2. Under the 1989 ordinance, political signs are specifically exempted from the definition of temporary “non-accessory” signs. City Brief, exhibit A, Section VII-E(l)(c).[3] In order to erect a “temporary” sign, a permit must be obtained from the Building Inspector. The display of such signs is permitted “for a period of 45 days preceding and 3 days after the relevant event” and such signs are not permitted to be “attached to a tree or utility pole." City Brief, exhibit A, Section VII-E(l)(c). The 1989 ordinance does not impose dimensional restrictions on temporary signs. City Brief, exhibit A, Section VII-E(l)(a)-(c).
The 1989 ordinance also exempts “directional signs” which don’t contain words or symbols, City Brief, exhibit A, Section VII-E(2), and certain other kinds of signs which are simply declared not to be signs under the ordinance. This latter category includes (a) owner or occupant identifiers[4] and professional signs up to 2 square feet in area, (b) flags and government insignia, (c) information on gasoline pumps relating to price and product, (d) legal notices or information required by public agencies, (e) something described as “integral decorative or architectural features of buildings” and (f) lettering on awnings up to 4 square feet in area. City Brief, exhibit A, Section VII-F(l)-(6).
With regard to those signs that are covered by the 1989 regulation, including temporary signs, the City of Methuen regulates the number of signs permitted in any one yard, and their manner of construction, their maintenance, their placement, and their illumination and motion. City Brief, exhibit A, Section VII-C(2) (construction and maintenance), (D)(l)-(5) (number, placement, illumination and motion). The 1989 regulation permits one “non-accessory” temporary sign in each yard. City Brief, exhibit A, Section VII-Dl(b). Any standing sign is also governed by a set-back requirement which sets five feet as the minimum distance that must exist between the “street lot line” and the sign. City Brief, exhibit A, Section VIID2(b). However, there is no dimensional restriction on the size of standing signs under the 1989 regulation.
The 1989 regulation also contains a provision expressly prohibiting any signs that fall within any of three categories: (a) signs that are deemed “hazardous to traffic” by the police chief, (b) signs that are within or over a public right of way (unless permission of the agency with jurisdiction has been obtained), and (c) signs which indicate a use or product not specifically available on the premises. City Brief, exhibit A, Section VII-D4(a)-(c).
2. The 1994 Amendment to the Methuen Zoning Ordinance. The 1994 amendment singles out for the first time political signs. It does this by replacing the definition of “Temporary Non-Accessory Sign” in the 1989 ordinance with a new definition which reads as follows: “one referring to an event or activity not related to the premises.” Ordinance 498, section II. It also adds a new definition to the 1989 Regulation as follows: “Temporary Non-Accessory Political Campaign Signs.” This new term is defined as follows: “Signs announcing a person’s candidacy for election ...” This new definition also contains four additional elements (1) that restrict the length of time such signs may be displayed, (2) that restrict the placement of such signs, (3) that allow such signs in all districts, (4) that restrict the size of such signs. Ordinance 498, Section III.
The particular aspects of Ordinance 498 that is challenged by the plaintiff in this case are the provisions that restrict the dimensions and the placement of such signs. Under the 1994 amendment, ”[n]o political sign shall exceed 3 square feet in any dimension.” Ordinance 498, section HI(3)(a). Further, “(n]o political sign shall be placed closer to a street lot line than one-half the minimum front yard required for the district, or one-half the actual yard between a street lot line- and an existing building whichever is less, but in no case less than five (5) feet from the street lot line.” Ordinance 498, section III(3)(c).
3. Particular facts involved in this case. It is not entirely clear how the matter of political signs was handled by the City under the 1989 ordinance. It appears, for example, that ahorne owner could display only one sign of any kind, including political signs, in a front yard and none in a rear or side yard. City Brief, exhibit A, Section VII-D1 and D2(a). However, under the 1989 regulation, such signs, including political signs, would fall under the definition of “standing signs” and would be required to conform to the set back requirements. City Brief, exhibit A, Section VIID2(b). Such signs could be prohibited as a hazard to *342 traffic and restricted to areas outside of a public right-of-way. City Brief, exhibit A, Section VII-D4(a)(b). It’s unclear, however, whether a permit had to be obtained for such signs. The affidavit submitted by Kevin P. Hagerty, Assistant Director for Planning in the City of Methuen, suggests that political signs were simply exempt from most regulations under the 1989 law. Affidavit of Kevin P. Hagerty (hereafter, “Hagerty Aff.”). However, the record does not permit the court to make any findings with regard to patterns or practices of enforcement with respect to political signs in the City of Methuen under the 1989 ordinance.
Mr. Hagerty’s duties as a City of Methuen official include reviewing and recommending changes in the Comprehensive Zoning Ordinance of the City of Methuen. Hagerty Aff. para 4. In consultation with other city officials, Mr. Hagerty made a judgment that the proliferation of signs in Methuen[5] were obstructing views, distracting motorists, creating barriers to traffic, damaging municipal property, and detracting from the aesthetics of the community. As a result, he made a further judgment that additional government regulation was required. Hagerty, aff., para. 5-6. After study, in 1994, Mr. Hagerty proposed an amendment to the Zoning Ordinance of the City. In 1994, the City Council of Methuen adopted Ordinance 498 as an amendment to its 1989 Sign and Illumination regulation.
The plaintiff made it clear at the oral argument in this case that his challenge is focused on two features of Ordinance 498 — its restriction on the size of political lawn signs and on the set-back requirements that do not allow such signs to be closer than 5 feet to the street lot line. The city has responded with evidence in the form of affidavits by two officials — Mr. Hagerty, Assistant Director of Planning and Mr. Deschene, the Building Commissioner. According to the Hagerty affidavit, under Ordinance 498, political signs may be displayed in all districts, and are governed by a setback requirement that is the same as that for all other standing signs. Furthermore, he states that under Ordinance 498, political signs do not require a permit from the Building Inspector or payment of a fee. Hagerty Aff, para. 8. Mr. Hagerty also points out that under Ordinance 498, political signs “may be placed within a five- to fifteen-foot distance from the street lot line based upon existing conditions. The sign size of three square feet is easily observable to a passing pedestrian or motorist, while at the same time being a distance setback so as to not create a visual block or safety problem or to substantially impair the aesthetic values of the municipality. To my knowledge the sign ordinance has been evenhandedly applied since its adoption.” Hagerty Aff., para. 8. Mr. Hagerty also opines that persons who desire to express a political message in the City of Methuen have other channels of communication besides signs such as cable TV, local newspapers and radio stations as well as leaflets. Hagerty Aff. at 2.
According to the affidavit by Mr. Deschene, in August 2000, he informed the plaintiff and other candidates for political office about the requirements of Ordinance 498, gave them a copy of the ordinance, and advised them that he was responsible for enforcing it. Mr. Deschene also states that four of plaintiff Tierney’s signs were on or near private property but actually located in a public right-of-way in violation of the set-back requirements of Ordinance 498 (as well as the 1989 ordinance). Deschene Aff. at 2. In two instances, Mr. Deschene states that he talked with the owners of the property who are identified by name and they reported that they had not given permission for the plaintiffs signs to be displayed on their property. Deschene Aff. at 2. He adds that “(i]n fact, during the course of my review of the Tierney signs, I did not find one property owner who had indicated that they had authorized the sign to be placed there and who had placed the sign there.” Deschene Aff. at 2. He also states that “as a motorist myself’ when signs are placed inappropriately or “excessive in size” they serve as a distraction to persons operating motor vehicles. Deschene Aff. at 3. Finally, he opines that “I have specifically noted that a pedestrian and/or motorist can still observe signage and receive the political message being delivered.”
DISCUSSION
Under Massachusetts law, a city or town has a valid interest in and the power to adopt zoning ordinances or by-laws that are designed to preserve or improve its visual environment. John Donnelly & Sons, Inc. v. Outdoor Advertising Board, 369 Mass. 206, 224 (1975). See also City Council v. Taxpayers for Vincent, 466 U.S. 789, 807 (1984) (“The city’s interest in attempting to preserve [or improve] the quality of urban life is one that must be accorded high respect”) (quotations omitted). But this power is not without limits. When a municipality adopts a zoning law that regulates political speech, as in this case, it assumes certain special responsibilities and must overcome burdens beyond those associated with an ordinary exercise of the police powers in order for the regulation to meet constitutional requirements. “Above all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.” Police Department of Chicago v. Mosley, 408 U.S. 92, 95 (1972). “A restriction, however, on the ‘time, place, and manner’ of speech is permissible if it advances a significant governmental interest, is justified without reference to the content of the speech, and leaves open ‘alternative channels for communication of the information.’ ” Matthews v. Town of Needham, 764 F.2d 58, 59 (1st Cir. 1985) (striking down a town by-law that barred posting political signs on residential property) (citations and quotations omitted); Tauber v. Town of Longmeadow, 695 F.Sup. 1358 (D.Mass. 1988) (same). When a regulation limits the use of or display of political signs or posters, the municipality assumes a *343 heavy burden because it is in the context of campaigns for political office that the First Amendment “has its fullest and most urgent application.” See Monitor Patriot Co. v. Roy, 401 U.S. 265, 272 (1971).
In Baldwin v. Redwood City, 540 F.2d 1360 (9th Cir. 1976), the Court of Appeals for the Ninth Circuit considered a challenge to a city ordinance that limited the size of temporary political signs to 16 square feet. The ordinance stated that “(n]o temporary sign shall exceed sixteen square feet in area.” Id. at 1363. It also imposed a limit on the aggregate area of signs on a single parcel to no more than 80 square feet. The Court of Appeals upheld the validity of this dimensional regulation because, unlike a content-based restriction, a reasonable dimensional restriction has only an incidental restriction on expression such as the decibel-level limitation upheld in Kovacs v. Cooper, 336 U.S. 77 (1949). The Court of Appeals noted that the city’s legitimate interests might be satisfied by slightly less restrictive size limitations, but observed that “(s)ueh distinctions in degree become significant only when they can be said to amount to differences in kind.” Id. at 1369, quoting Buckley v. Valeo, 424 U.S. 1 (1976).
The year following the decision in Baldwin, the Ninth Circuit considered another challenge to a city ordinance restricting the dimensions of political signs. In Verrilli v. City of Concord, 548 F.2d 262 (9th Cir. 1977), the Court considered a city ordinance that restricted political signs on residential property by providing that they could not exceed a maximum total area of 4 square feet with a maximum dimension of 2 feet. The court distinguished Baldwin on grounds that there the city had sought to justify the restrictions by reference to aesthetics, public safety and reducing the accumulation of debris. In Verrilli, the court pointed out that no such justifications were offered by the municipality and that the ordinances was, therefore, invalid as a violation of the First Amendment. Id. at 266. Cf. Candidates’ Outdoor Graphic Service (COGS) v. City and County of San Francisco, 574 F.Sup. 1240 (N.D.Cal. 1983) (upholding the validity of a municipal ordinance that prohibited temporary signs on public property other than lamp posts and utility poles, and limited the size of such signs eleven inches in height with apparently no limit on the width of the sign other than what was imposed by the physical dimension of the poles and lamps).
Under Ordinance 498, “[n]o political sign shall exceed 3 square feet in any dimension.” City brief, exhibit B, 111(d)(3)(a). This language of this provision is ambiguous in that it could be understood to mean that the maximum size of a political sign is three square feet or it could mean that the maximum size is 9 square feet (3 feet in any dimension). There is a reference in the affidavit of Mr. Hagerty that describes this restriction as “3 square feet.” Other provisions of the 1989 Zoning regulation which make reference to the dimension of certain signs are phrased without ambiguity. For example, signs that identify an occupant or resident of a building are exempt from restriction so long as they do not exceed “two square feet.” City brief, exhibit A, section VII-B( 1). Because a representative of the city charged with responsibility for reviewing and updating the zoning ordinance has expressed the view that it is understood to restrict political signs to no more than 3 square feet in size, I will interpret the language to impose such a requirement.
One aspect of the analysis employed in the cases dealing with municipal zoning laws that restrict the use or display of political signs is a consideration of whether the restriction is more burdensome to speech than is reasonably necessary to accomplish the ends sought to be achieved by the regulation. See Matthews, supra at 60, discussing Metromedia v. City of San Diego, 453 U.S. 490, 507 (1981). While this consideration may have primary application in cases in which the regulation being challenged is a content-based restriction on political speech, such as the absolute ban on political signs struck down in Matthews, supra, it has application in the case of content-neutral restrictions as well. See Arlington County Republican Committee v. Arlington County, 983 F.2d 587, 594 (4th Cir. 1993) (limit of two temporary political signs per property in residential districts was unconstitutional). In any case, the restriction in the case before me is more like a content-based restriction on political speech because Ordinance 498 limits political signs to no more than 3 square feet, while a variety of other types of temporary signs regulated under the 1989 ordinance are not subject to any dimensional restrictions.
In State v. Miller, 83 N.J. 402, 416 A.2d 821 (1980), the New Jersey Supreme Court reviewed a municipal by-law that limited, by implication, the size of political signs (and certain others) to a maximum size of two square feet. Certain other kinds of temporary signs relating to religious and charitable purposes could be up to 25 square feet in total size. Any sign over six square feet in total area required a permit. However, the by-law was worded in such a way that a residential property owner was limited to a sign of not more than 2 square feet in which to communicate a political message. Id., 83 N.J. at 411, 416 A.2d 825-26. In declaring the by-law to be unconstitutional on its face in violation of the First Amendment, the court made this observation:
Limitations on the size of a sign may be imposed if the allowable square footage is not determined in an arbitrary manner. The size limits, if any, must be large enough to permit viewing from the road, both by persons in vehicles and on foot. Inadequate sign dimensions may strongly impair the free flow of protected speech.
In the present case, the City of Methuen has adopted a zoning law that limits the size of political *344 signs to no more than 3 square feet le., no more than 18 inches in any dimension, but has not imposed comparable limits on other types of temporary signs. Thus, under this law, a temporary sign larger than 3 square feet in size, announcing the construction of a building, a store-wide clearance sale in a retail store, a special price in a restaurant or take-out food establishment, a fair or bake sale at a church or synagogue, or any one of a number of other types of announcements relating to fund-raising events on behalf of local charities or organizations, could be erected and displayed without running afoul of the law. The defendant city's response to this discriminatory treatment under the zoning laws in Methuen is that temporary signs other than political signs (except for certain temporary signs that are less than 3 square feet in size) can be erected and displayed only by applying for and securing a permit.
Obviously, the obligation to file an application with the Building Inspector, perhaps to pay a fee, and to submit to an evaluation or inspection is a burden. However, the teaching of the cases relating to the First Amendment is that the government cannot justify a burden on certain types of speech, such as the political expression involved in this case, simply by removing other burdens that it imposes on the exercise of other modes of expression. Furthermore, there is no evidence in the record to permit a finding that this is a difference with a. distinction. We do not know anything about the practices or procedures of officials and agents of the City of Methuen who have a role in approving or rejecting applications for permits for signs. Moreover, in light of the absence of dimensional restrictions on many other types of temporary signs, there is nothing in this record to support the determination made by the City of Methuen that the goals and objectives it has advanced for regulating political signs reasonably require that they not exceed 3 feet in total area.
While I also have reservations about whether a 3-square-foot restriction would be valid if made applicable to all temporary signs, including political signs, because of the impact of such a limitation on their visibility, see Baldwin v. Redwood City, supra, and State v. Miller, supra, there is no evidence in the record before me (other than the opinion of one city official) about how visible such signs are to the public, and it is unnecessary to decide that question in light of the determination that I have made that the City of Methuen has not demonstrated a substantial governmental interest in imposing a 3-square-foot restriction on political signs, but not on other types of temporary signs.
With regard to the set-back requirements, it appears that all standing signs, both political signs and other types of signs, temporary and otherwise, are subject to the same basic requirement that they not be placed any closer than 5 feet to the street lot line. There is no evidence in the record before me to permit a finding that this measure unfairly or unduly burdens the expression of speech protected by the First Amendment. Accordingly, I do not find this feature of the ordinance to be invalid.
Based on the foregoing, I conclude that Section VII-E(d)(3)(a) of the 1989 Zoning Ordinance of the City of Methuen, as amended by Ordinance 498 of 1994, is invalid as a violation of the First Amendment to the Constitution of the United States. Nothing contained in this decision should be construed to mean that any other provision of the Zoning Ordinances or laws of the City of Methuen are invalid or unenforceable, nor should this opinion be construed to mean that all other provisions of the zoning ordinance in question satisfy constitutional requirements.
ORDER
For the above reasons, it is ORDERED AND ADJUDGED that the City of Methuen, and its officers, agents, employees and assigns are hereby ENJOINED and RESTRAINED and ordered not to enforce the 3-square-foot maximum dimensional limit on political signs contained in Section VII-E(d)(3)(a) of the 1989 Zoning Ordinance of the City of Methuen, as amended by Ordinance 498 of 1994. The defendant City will have an opportunity at trial to produce evidence to demonstrate that the disparate treatment afforded to political signs, in terms of their maximum allowable dimensions, serves a substantial governmental interest and is consistent with the requirements of the First Amendment.

 The complaint was initially filed late in the day on Friday, August 25, 2000. The plaintiff requested ex parte relief in the nature of a temporary restraining order against the defendant City of Methuen to prohibit enforcement of the ordinance. That motion was denied without prejudice. A short order of notice was issued and a hearing on a preliminary injunction was conducted on Tuesday, August 29, 2000. At the same time, the court also denied a motion for admission, pro hac vice, of attorney William F. Hurley of Geneva, Illinois on behalf of the plaintiff. The plaintiff has not obtained local counsel in the matter and is representing himself.

 In his verified complaint, plaintiff alleges that during August, 2000 he displayed 9 “lawn signs” promoting his candidacy at 9 different locations in the City of Methuen. He alleges that each sign was identical in content, did not pose any safety threat and were all located on private property. Complaint, paragraph 3. Initially, the plaintiff alleged that he had been singled out for unequal and discriminatory treatment. Complaint, paragraph 6. At the hearing held on August 29, 2000, the plaintiff conceded that the city is enforcing the challenged ordinance on an even-handed basis against all candidates for political office including himself.

 According to the 1989 regulation, ‘Temporary Non-Accessory Signs” are “permitted only for non-commercial events, not including elections, and the organization sponsoring such signs shall be required to obtain a permit from the Building Inspector. The display of such signs is limited to a period of 45 days preceding and 3 days after the relevant event, whereupon they shall be removed. No such sign shall be attached to a tree or utility pole.” City Brief, exhibit A, Section VII-EdXc).

 Under section VII-B(l) of the 1989 regulation, “[s]igns in recognition of an occupant in a residential building will not be affected by this section, provided the sign area does not exceed two feet."

 The Hagerty affidavit makes reference to the proliferation of signs in the City of Methuen prior to the adoption of Ordinance 498, but not specifically to “political” signs. According to Mr. Deschene, the Building Commissioner of the City of Methuen who also submitted an affidavit, prior to Ordinance 498, “there were no sign enforcement provisions.” Deschene Aff. at 2. Again, it’s unclear whether he was referring, in particular, to political signs.